# IN THE COURT OF APPEALS OF IOWA

No. 19-2127
Filed April 28, 2021

**EVELINE JOHNSON, Individually, and in her capacity as Executor of the Estate of GREGORY ALAN SOMERS, Deceased,**
    Plaintiff-Appellee,

**vs.**

**DENNIS D. SOMERS and SOMERS FARM, L.L.C., an Iowa Limited Liability Company,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Buena Vista County, Don E. Courtney, Judge.

The defendants appeal from the district court's ruling in this action for an accounting and declaratory judgment. **AFFIRMED AS MODIFIED.**

David P. Jennett of Dave Jennett, P.C., Storm Lake, for appellants.

Richard H. Moeller of Moore, Corbett, Heffernan, Moeller & Meis, L.L.P., Sioux City, for appellee.

Heard by Bower, C.J., and Doyle and Mullins, JJ.

**BOWER, Chief Judge.**

Dennis Somers (Dennis) and Somers Farm, L.L.C. (Somers Farm) appeal the district court's ruling in this action for an accounting and declaratory judgment brought by Eveline Johnson (Eveline), individually and as executor of the estate of Gregory Somers (Estate), in relation to the Estate's interest in Somers Farm.[1]  The defendants contend equitable relief for partial liquidation should not be allowed, the court's ruling provides for a double recovery of $75,000, and the interest rates and dates of accrual should be modified.

We affirm the court's decree in all respects with one exception.  We modify the language of decretal paragraph 2(e), which shall provide: "Interest on the Capital Interest amount shall accrue at the statutory rate for interest on judgments from and after November 29, 2019."

**I. Background Facts and Proceedings.**

Gregory Somers (Greg) and his brother Dennis were involved in a number of business dealings together for many years, including telecommunications ventures in Greg's home state of Texas and telecommunications businesses and property investments in Dennis's home state of Iowa.  At issue here is Somers Farm, an Iowa limited liability company.

Greg died on September 19, 2011.  On November 16, Dennis sent an email to B. Bruce Johnson "to execute the Somers Farm LLC buy sell agreement."  Two letters were attached to the email.  In one, Attorney John Bjornstad wrote:

> The purpose of this letter is to inform you that Dennis Somers intends to invoke the Somers Farm, L.L.C. Buy-Sell Agreement.

---

[1] At oral argument, the Estate acknowledged there are no individual claims made by Eveline and the only claims involve the Estate.

3

Dennis, [(Dennis's wife)] Kathryn and Greg were the original members of [Somers Farm]. Dennis and Kathryn each owned a [forty-five] percent interest in [Somers Farm] while Greg owned a [ten] percent interest, Kathryn's interest transferred to Dennis upon her passing away in 2009.

The Agreement states that the initial value of Greg's interest is set at $52,500.00 in 2003. The parties did not adjust this value in subsequent years. Dennis is proposing a variation in the calculation of the purchase price for Greg's interest in the LLC.

Attached to this letter is a letter from Dennis to [Eveline, Greg's life partner,] affirming Dennis'[s] intentions to purchase Greg's interest in the LLC, Dennis has set the equity of the LLC at $575,770.00. Greg's 10% interest being $57,577.00. Listed among the liabilities is a general business debt of Dennis and Greg's in the amount of $148,000.00. This debt was generated by Net/Com but the bank required that the debt be secured by [Somers Farm] giving a mortgage to the Webb 150 acres. Dennis has personally assumed this debt, Greg's portion of said debt being $74,016.84. Dennis proposes that his overpayment of $16,439.84 ($74,016.84 less $57,577.00) be held over to see if the Net/Com debt can be settled by another of Dennis and Greg's businesses.

Dennis wrote to Eveline:

In reference to the Personal Guarantee's that Greg and I signed on the Net/Comm[2] line of credit, the loan has been inactive for [twelve] months. In the last [two] years we have managed to pay interest but have not been able to reduce the principal, this was set up to be a revolving line of credit. The amount was $150,000 and we made one $5000 interest and principal payment back in June just before we were served with a judgment and lien on the bank account from BLS for approximately $60,000. These circumstances have made it very difficult for the bank to even think Net/Com has or ever will have the ability to repay the debt. The total payoff is $148,033.68, that is principal and interest to date. Since Net/Comm

---

[2] Bjornstad's reference to Net/Com and Dennis's references to Net/Comm or Net/Com all appear to mean Net/Comm Services Corporation, a Texas Corporation formed on July 31, 2003. Its registered agent is B. Bruce Johnson (Johnson) with a mailing address of Dallas, Texas. The articles of incorporation list Dennis as the sole initial director. Dennis is listed as the President of the corporation in other official Texas filings.

Eveline testified Net/Comm was "a telecommunications company that sold originating and terminating traffic to other carriers, domestic and I believe there might have been international involved." In 2010, Net/Comm's tax documents reported Dennis owned 100% of the shares. Dennis testified Greg was the CEO of Net/Comm.

has absolutely no way of paying this debt now or in the future the bank has asked that the guarantors pay it in full. In an effort to preserve ownership of the 150 acres of hunting land that I purchased in 1996 I am paying the full amount of the loan off immediately. I can't risk losing the relationship with the bank.

To simplify our individual family estates, trusts, wills etc. I have made the decision to execute the buy sell agreement as agreed upon by Kathy, Greg and I by the filing of the attached articles containing the buy/sell agreement signed and filed in 2004. . . . I have attached a copy of a letter from John Bjornstad that serves as my official request on this matter.

Johnson[3] responded by email dated November 18:

Hi [Dennis], I have read your email and I think there is a misunderstanding. I was Greg['s] attorney and represented his companies over the years. I am not the attorney for the estate, I am not [Eveline's] attorney and I think your action may be premature. No probate has been filed, the will has not been confirmed, [Eveline] has not been appointed the executrix. So there is nothing that can be done for now.

Eveline was appointed the executor of the Estate on March 5, 2012.[4] As executor, Eveline was required to determine the assets and liabilities of the Estate. Eveline engaged Texas attorney Robert Frisch to assist her as executor.

On September 17, 2013, Frisch wrote to Dennis noting Eveline requested all legal files and documents Dennis and others removed from Greg's office "in violation of the orders of Bruce Johnson that nothing be removed from the home, and that you were to only make copies of documents needed for the continued business operations of Net/Comm and 800 Special Services." The letter also noted Dennis had not responded to a May 2, 2013 subpoena, had produced no

---

[3] B. Bruce Johnson and Eveline Johnson are not related.
[4] Eveline submitted Greg's will to the Texas probate court, which appointed her executor under the terms of Greg's will.

documents, and had not appeared in court on June 29 per that subpoena. The letter continues:

> Also, we need to resolve with you the issue of the interest Greg Somers had in Somers Farm, LLC. In a letter dated November 16, 2011, your attorney John Bjornstad, on your behalf, wrote to Bruce Johnson advising that Greg owned only a ten percent (10%) interest and that you and your wife, Kathryn, owned ninety percent (90%). We believe that position is controverted in the documents that you removed from Greg's home. . . .
>
>     . . . .
>
> Accordingly, it is the Estate's position that the Estate of Greg Somers does own fifty percent (50%) of Somers Farm, LLC.; that Somers Farm, LLC., had no debt against it after the mortgage to the bank was paid; that you made no demand upon the Estate to pay a portion of the debt and have filed no claim with the Estate. Ms. Johnson does not dispute your right to purchase Greg's interest if, in fact, you can establish that the Buy/Sell Agreement was signed and in effect at Greg's death. In September, 2011, you provided to Bruce Johnson a Buy/Sell Agreement which was not dated.
>
> Furthermore, your proposed buyout of the interest of the Estate in Somers Farm, LLC., has been rejected by the Executrix. Also, your claim, stated by your attorney, that Greg Somers owed you or the LLC $74,016.84 is rejected.

On May 12, 2015, Eveline filed this action requesting an accounting of Somers Farm and seeking a declaration that the Estate had a fifty-percent interest in Somers Farm. The defendants filed an answer, asserting an accounting of assets would be produced and contending Greg had only a ten-percent interest in Somers Farm. The defendants also asserted a number of affirmative defenses and a counterclaim for a declaration that Dennis be determined to be the sole member of Somers Farm by virtue of a buy-sell agreement exercised on November 14, 2011, and an order that the Estate indemnify Somers Farm "for any amounts paid to or on behalf of Gregory Somers in excess of his capital account and for attorney's fees and court costs required to be paid in connection to Plaintiffs' lawsuit."

In November 2017, the Estate was granted leave to file an amended petition, and the defendants were granted summary judgment on the Estate's claim for derivative action but denied summary judgment on other grounds.

Trial was held July 11, 12, and 13, 2018. Eveline testified all of Greg's papers concerning his businesses had been taken out of his office after the funeral and she had been required to attempt to reconstruct them from various sources.[5] The Somers Farm entity was originally set up in 2002 as a partnership—Somers, Ltd.—with Greg owning fifty percent, Dennis owning twenty-five percent, and his wife Nada Kathryn (Kathy) Somers owning twenty-five percent. Title to Iowa land owned by the three individuals was placed in that partnership.

On March 10, 2004, "Articles of Organization for Somers Farm," the limited liability company, were signed by Dennis as organizer and filed with the Iowa Secretary of State. Article VII provides:

> Managers of the limited liability company shall not be liable to the limited liability company or its members for monetary damages for breach of fiduciary duty as a manager; provided, however, that this limitation of liability does not apply to any of the following;
> 1. Breach of the manager's duty of loyalty to the limited liability company or its members.
> 2. Acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law.
> 3. Transaction from which the manager derives an improper personal benefit or a wrongful distribution in violation of Iowa Code Section 490A.807 [(2003)].

---

[5] Eveline testified that in 2015, she found Somers Farm documents in a box in her attic. Included in that box was a November 22, 2003 letter to Dennis and Greg from Bjornstad with enclosed proposed operating agreement and a buy-sell agreement. The proposed buy-sell agreement listed the interest of the parties as Dennis, twenty-five percent; Kathy, twenty-five percent; and Greg, fifty percent. The documents were not signed.

Between August and September 2004, property owned by Somers, Ltd. was deeded to Somers Farm. Additional properties owned by Dennis, Kathy, and Greg were also deeded to Somers Farm.

Eveline obtained a signed Somers Farm operating agreement, dated June 30, 2004. The agreement was signed by Dennis, Kathy, and Greg. Section 2.04 of the operating agreement provides: "The names and addresses of the Members are set forth on Appendix A to this Agreement." And section 4.01 provides: "The Members listed on the Appendix to Section 2.04 have contributed the consideration to the capital of the Limited Liability Company and have received the Units representing either a Capital Interest or Profits Interest as set forth on Appendix A." In an October 1, 2012 communication between Bjornstad and Eveline's counsel, Bjornstad wrote "there was no appendix to the Operating Agreement." Bjornstad also noted: "[t]here are no books as to each member's capital account" and "[t]here are no accounting records but I am enclosing statements of income and expenses from 2005 through 2011."

In 2005, Somers Farm issued a tax document (Schedule K-1) to Greg noting his share of Somers Farm was fifty percent. Eveline submitted additional tax documentation that Greg was noted as a fifty-percent member of Somers Farm from 2005 through 2010. As managing member, Dennis was responsible for those filings. Eveline also submitted USDA farm operating plan documents—signed by Dennis—listing Greg as a fifty-percent member in 2009 and 2010. In 2012, Somers Farm's USDA farm operating plan listed "Gregory A Somers Estate" as

having a fifty-percent share; Dennis as a twenty-five-percent share, and Linda Somers, "spouse of Dennis Somers,"[6] as having a twenty-five-percent share.

Eveline testified the assets of Somers Farm at the time of Greg's death included machinery and equipment and three recreational and hunting properties in Iowa known as (1) the Cabin and 20 acres, (2) the Doc Larson 80, and (3) the Webb 150.  Eveline testified Somers Farm was owed the remaining proceeds from an installment sales contract (the Hoover contract), the final annual installment being due April 1, 2014.

In response to Eveline's request for an accounting, Dennis provided the following one-page document, which he acknowledged contained estimated property values at what he "felt" was a "fair price."

2011 Somers Farm LLC Assets

| | | | |
|---|---|---|---|
| Cash in bank | $ | 14,000.00 | |
| Crop in elevator | $ | 2070.00 | |
| Equipment | $ | | |
| IH Tractor | $ | 8500.00 | |
| Polaris Ranger | $ | 7500.00 | |
| Utility Trailer | $ | 1700.00 | |
| Bob Cat Skidloader | $ | 7000.00 | |
| Land | $ | | |
| Cabin on 20 acres | $ | 185,000.00 | |
| Doc Larson 80 | $ | 290,000.00 | |
| Webb 150 acres wetlands | $ | 225,000.00 | |
| | | | |
| Total Assets | $ | 747,770.00 | |

Liabilities

| | | | |
|---|---|---|---|
| Note to FarmCredit Doc | $ | 14,000.00 | Due on Jan 1, 2012 |
| LOC to CS Webb 150 | $ | 148,238.39 | Greg and [Dennis] used land as collateral and signed personally on this loan 50/50 |
| Credit Card Taxes | $ | 3000.00 | These were paid in September and card is due Oct 15 |
| | | | |
| Total Liabilities | $ | 165,238.39 | |

Total Equity

| | | | |
|---|---|---|---|
| | | $ | 575,531.61 |

---

[6] Kathy died in 2009, and Dennis later married Linda.

Buy/Sell Settlement Amounts

| Community State Loan | $ | 148,033.68 | |
|---|---|---|---|
| Greg's Estate Portion | $ | 74,016.84 | |
| Buy/Sell Amt | $ | 57,577.00 | |
| Amt owed to Denny | | 16,439.84 | |

Dennis used Community State Bank (CSB)[7] for the banking needs of both Somers Farm and Net/Comm Services. In 2007, Net/Comm Services obtained a line of credit from CSB. CSB required Greg and Dennis to co-sign a note to secure the $150,000 line of credit. On August 21, 2009, Somers Farm entered into a hypothecation agreement with CSB signed by Dennis, which provides in pertinent part, "In consideration of your making, renewing, or extending a loan or loans to [Net/Comm Services,] Dennis D. Somers and Greg A. Somers, hereinafter referred to as the borrower, for which the [Webb 150] belonging to me has been tendered to you as collateral security." Greg and Dennis renewed the promissory note for the Net/Comm Services line of credit on November 10, 2010. The CSB records for Net/Comm Services indicate the amount owed on the line of credit on November 19, 2010, was $148,238.89.

Eveline testified she learned that on November 9, 2011, Dennis obtained $225,000.00 from 1713 McNaughton Way, LLC (McNaughton Way). On March 7, 2012, McNaughton Way recorded a real estate mortgage between McNaughton Way and Somers Farm on the Webb 150 in the amount of $225,000.00. In 2015, Eveline was notified the March 7, 2012 mortgage was in default and was subject to voluntary foreclosure. The notice indicated a thirty-day redemption period and a debt owing of $236,613.70 plus interest.

---

[7] Referred to by Dennis as CS in the list of assets and liabilities.

Eveline testified she learned of the Somers Farm buy-sell agreement after Johnson sent her a copy of the September 2011 email from Bjornstad and Dennis. She testified Dennis did not follow any of the procedures set out in the buy-sell agreement.[8]

Eveline learned about the Hoover contract while carrying out her job as executor.

---

[8] The buy-sell agreement Dennis presented stated, in part:

Section Three

Death of Member

On the death of any member, the other members shall purchase the member's entire interest in the membership for a price and on terms as determined in Section Four.

Section Four

Determination of Price

It is agreed that the current fair market value of the membership's capital assets, including good will, is Five Hundred Twenty-five Thousand dollars ($525,000.00); and therefore, the value of each member's interest is as follows:

| | |
|---|---|
| Dennis D. Somers | $236,250.00 |
| Nada Kathryn Somers | $236,250.00 |
| Gregory A. Somers | $52,500.00 |

The members agree to redetermine these values within thirty (30) days following the last day of December and on the last day of December of each year with the first revaluation to take place no later than January 1, 2004. The redetermined value shall be signed by the members and attached and made part of this agreement.

If the members do not make such a redetermination for any twelve (12) month period, the last previously stipulated value shall control, except that if the members fail to make a redetermination for any twelve (12) month period and death occurs, then the purchase price shall be the deceased or disabled member's capital account as shown on the books of the membership at the beginning of the fiscal year in which the member's death occurred, adjusted as follows:

The capital account shall be increased or decreased by the deceased members' share of membership profits or losses from the beginning of the membership year to the date of death and decreased by the deceased partner's withdrawals during that period.

Bjornstad testified he prepared the legal documents and tax documents for Somers Farm over the years, relying on information provided to him by Dennis. Bjornstad testified the property sold to the Hoovers by way of the Hoover contract had been paid off early in 2012, the balance at that time being about $14,195. With regard to the buy-sell agreement, Bjornstad testified he discussed that with Dennis. He acknowledged the procedures of the agreement had not been followed when Kathy died or when Linda became a member. He acknowledged Dennis was proposing a method other than what was provided in the buy-sell agreement in his offer to Eveline. When asked why Dennis did not "just make the calculation as set forth in the buy-sell agreement," Bjornstad stated: "I don't think we discussed that. I think we just kind of went with what [Dennis] thought was going to be a good value for the property."

The Estate called Dennis to testify. He acknowledged he was responsible for the various tax and USDA filings for Somers Farm that showed Greg or his estate was a fifty-percent member of the limited liability company.

With respect to the loan from McNaughton Way, Dennis testified, "[T]he check from McNaughton Way was made out to Somers Farm, LLC, went into Somers Farm, LLC. I could have put it from Somers Farm, LLC into Net/Comm, I guess, via a loan." Dennis thus acknowledged the $148,238.89 payment he made to CSB on November 10, 2011, represented an unwritten loan by Somers Farm to Net/Comm Services and should be considered an asset of Somers Farm.

When asked what the purpose was for the March 7, 2012 mortgage Somers Farm granted to McNaughton Way, Dennis stated it was "[t]o collateralize the

[November 2011] loan for [$]225,000 from McNaughton Way." His testimony continued:

> Q. So in addition to the mortgage given to McNaughton Way by Somers Farm, LLC, did—excuse me, did Somers Farm, LLC also sign a note obligating the company to pay $225,000 to McNaughton Way? A. Yes.
>
> Q. And that was different from what the situation was when the loan was solely the obligation of you and Greg and Net/Comm Services Corporation; correct? A. Correct.
>
> Q. And how much was the loan that had to be paid to [CSB] by you, Greg and Net/Comm Services Corporation? A. I believe it was a little over $148,000 was the payoff.
>
> Q. The—the money you borrowed from McNaughton Way was in the amount of $225,000; correct? A. That's correct.
>
> Q. So there was an excess—there was an additional $75,000 over and above the amount that had to be paid to [CSB]? A. Yes, sir.
>
> . . . .
>
> Q. What happened to that money? A. Transferred that into an interest-bearing account to be able to use for ongoing expenses in the forward years.
>
> . . . .
>
> Q. Okay. So Somers Farm, LLC had a savings account as well? A. I don't believe so. I believe that was an account only in my name.
>
> Q. So you transferred to this to your savings account? A. Yes, I believe so.

On November 29, 2019, the district court entered its findings of facts, conclusions of law, and decree. We set out pertinent fact findings here:

> 34. . . . . The court therefore finds that the $75,000 that Dennis caused [Somers Farm] to transfer to him was wrongful to other members, or it constituted a cash distribution or withdrawal of capital, which was made without a corresponding cash distribution or withdrawal to the other members of the limited liability company.
>
> 35. When Nelson [owner of McNaughton Way] gave Dennis the $225,000 on November 11, 2011, there was no written agreement, oral agreement, note, mortgage, or other documentation evidencing the terms of the transaction. Therefore, there is nothing to show that [Somers Farm] was a borrower at that time. Not until March 7, 2012, four months after, did Dennis cause him and [Somers Farm] to sign a note in favor of McNaughton Way, and cause [Somers Farm] to secure that note with a mortgage on the Webb 150.

Dennis claims he had the authority to take this action on behalf of [Somers Farm] as its manager, pursuant to various provisions of the Operating Agreement.

36. When defining and considering Dennis'[s] authority and duties as manager of [Somers Farm], he might be able to persuade the court that Greg consented to or acquiesced in those actions before he died. The same cannot be said about those same rights and obligations as they apply to Eveline and Estate. Instead, the evidence shows, and the court finds that within days or weeks after September 19, 2011, Dennis knew that Eveline disputed his position regarding the Buy-Sell Agreement; that soon after March 5, 2012, Dennis knew Eveline had been appointed as executor of Estate; that Dennis knew by at least by August 23, 2012, that Estate was demanding to be treated as a transferee of . . . Greg's membership interest; and that by May 12, 2015, Dennis had been sued by Estate for an accounting, breach of fiduciary duty, and other claims. Any one of these circumstances put Dennis on notice that Eveline and Estate expected him to act as a fiduciary and perform his duties according to the terms of the Operating Agreement and the law applicable to limited liability companies.

37. Given this change in circumstances, Dennis'[s] actions on March 7, 2012, must be measured according to the terms of the Operating Agreement and applicable law. Dennis points to the enumeration of powers under Section 6.02 of the Operating Agreement. However, each of those *specific* authorities are prefaced with the requirement that they are granted as "necessary, proper, convenient or advisable to effectuate and carry out the purposes, business and objectives of the Limited Liability Company." Given the findings in paragraph 34 above, the most egregious being the $75,000 of the $225,000 that Dennis transferred to himself, the note and mortgage made by [Somers Farm] to McNaughton Way does not fit within this grant of authority.

38. Likewise, the change in circumstances flowing from Greg's death show Dennis'[s] actions regarding [Somers Farm's] financial matters fall far short of his duties as manager. . . . Dennis did nothing to change the way he treated [Somers Farm] as his own personal asset, paying his personal obligations or purposes (i.e., a house mortgage payment, a donation to Iowa Lakes Corridor), loaning money to others (i.e., loan [or transfer to other entities Dennis owned or controlled]), and generally commingling funds between [Somers Farm's] checking account with accounts belonging to him and other entities he owned or controlled. All the while, right up to the present time, Dennis failed to maintain any form of bookkeeping or accounting, and as a result he does not (at least at this time) have the ability to trace funds going in and out of the account, so as to enable the Estate to exercise its rights as a transferee.

39. The court therefore finds that the loan should have been only an obligation of Dennis and/or [Net/Comm Services], that Dennis'[s] actions in causing [Somers Farm] to incur a secured obligation have to be measured by his duties as the manager of the limited liability company, and that Dennis exceeded his authority to make [Somers Farm] a maker of the note to McNaughton Way and to execute and deliver the mortgage to secure that debt.

40. Subsequently, Dennis caused [Somers Farm] to convey all of the Webb 150, owned by [Somers Farm], to McNaughton Way by voluntary foreclosure, to release himself from any liability on the debt. The result is that [Somers Farm] surrendered an asset that Dennis claimed was worth at least $225,000 in exchange for discharging a debt [owed by Dennis or Net/Comm] of $148,238. Dennis tried to explain this loss of over $76,000 by claiming that [Somers Farm] received those funds and used them for other company expenses, including the Farm Credit loan and interest on the McNaughton Way note. The court does not accept this explanation as true.

The court also found "Greg's death, without more, did not require dissolution of [Somers Farm] because [Dennis] (and presumably Linda) consented to its continuation pursuant to the Operating Agreement."

With respect to both the Hoover contract and Somers Farm, the court ruled Greg had a fifty-percent interest at the time of his death.

The court concluded the Estate was a transferee member of Somers Farm entitled to an accounting for the Hoover contract and for Greg's membership interest. The trial court explained:

An action for an accounting is generally in two parts: determining whether the plaintiff is entitled to an accounting, and, if so, the actual accounting. 1 Am. Jur. 2d, Accounts and Accounting § 65; *Ontjes v. McNider,* 224 Iowa 115, 275 N.W. 328, 332 (1937). In the latter part, the burden to prove that the money over which he had control was properly handled may be shifted to defendant. 1 Am. Jur. 2d, § 65; *see Hum v. Ulrich,* 458 N.W.2d 615, 617 (Iowa Ct. App. 1990). And if the property has not been properly handled, the plaintiff is entitled to a judgment for the amount found due. 1 Am. Jur. 2d, § 67; 1A C.J.S. Accounting § 5.

The court has found that the sellers' interests in the Hoover Contract was never assigned to [Somers Farm], and thus Greg's

50% interest remained with him on the day he died. Therefore, when it was paid off on March 13, 2012, half of the sale proceeds should have been paid to Estate. By that time, Dennis knew Eveline had rejected his proposal for [Somers Farm], and by August 3, 2012, he was being asked, "What amount [of the sale proceeds] is owed to Greg's Estate." Accordingly, the Estate is entitled to judgment against Dennis for $7097.

Determining the Estate's entitlement to an accounting Iowa Code section 489.102(13) defines a member as "a person that has become a member of a limited liability company under section 489.401 and has not dissociated under section 489.602." A person is dissociated as a member of a limited liability company if the person dies. Iowa Code § 489.602(6)(a). "[W]hen a person is dissociated as a member of a limited liability company . . . any transferable interest owned by the person immediately before dissociation in the person's capacity as a member is owned by the person solely as a transferee," subject to Iowa Code Section 489.504. Iowa Code § 489.603(1)(c). Section 489.504 states that a "deceased member's personal . . . other legal representative may exercise the rights of a transferee provided in section 489.502, subsection 3, and for the purposes of settling the estate the rights of a current member under section 489.410." Further, Iowa Code section 489.502(3) states that, "In a dissolution and winding up of a limited liability company, a transferee is entitled to an account of the company's transactions only from the date of dissolution."

In its ruling on defendants' motion for summary judgment, this court directed that "Estate's right to 'full information' about [Somers Farm]'s 'financial condition' entitles the Estate to the accounting it requests so long as all of the requirements of section 489.410(2)(b) are satisfied and that the accounting request is for the purposes of settling the estate as required by section 489.504."

(Alterations to internal quotations in original.) The court concluded Eveline met the requirements under Iowa Code section 489.410(2)(b).

The court concluded Dennis failed in his burden to show the money over which he had control was properly handled after Greg's death. The court wrote, "As long as he maintains he is entitled to continue operations of [Somers Farm], he has to account to the Estate, as a transferee, from September 2011 to the present."

The court observed the Estate's claims involved "awarding it money judgments for the Hoover contract, its capital interest, and any distributions Dennis received for which an equal distribution was not made to the Estate," entitling the Estate to interest at the rate of five percent per annum from and after the date they were received by Dennis or Somers Farm and retained beyond a reasonable time without the Estate's consent.

The court decreed:

> 1. Dennis and [Somers Farm] shall provide Estate with a full, complete, and itemized accounting of all income and expenses of [Somers Farm] from and after September 1, 2011, to the present, audited and presented according to generally accepted accounting principles, and thereupon pay Estate any amount found to be due as a result of distributions made to Dennis but not to Estate, but no less than $75,000. Interest on the resulting amount shall accrue at the rate of 5% per annum from and after the date of any distribution, and in the case of the minimum amount, from and after November 14, 2011.
> 2. Dennis and/or [Somers Farm], jointly and severally, shall determine and pay Estate the amount of Greg's Capital Interest, as defined in the Operating Agreement, as of September 2011, under the following conditions:
>> (a) The amount must be based upon the actual amounts of its liabilities at that time, not estimates;
>> (b) It shall not include the debt then owing to[9] [Net/Comm Services];
>> (c) Dennis and/or [Somers Farm] shall provide to Estate objective, reliable, and verifiable documentation of the actual amounts of the liabilities and the fair market values of the assets, as of September 2011, and a calculation of the amount of the Capital Interest;
>> (d) The resulting Capital Interest shall be no less than $322,649.19;
>> (e) Interest on the Capital Interest amount shall accrue at the rate of 5% per annum from and after August 3, 2012.
> 3. If the Capital Interest is not paid within one hundred and twenty (120) days, Dennis will be required to liquidate as many of the assets of [Somers Farm] as necessary to pay such amount, and apply all of the net proceeds to the amount owing Estate.

---

[9] This is a typographical error as the court found the debt was owed *by* Net/Comm.

4. In the event of any disagreement between plaintiffs and defendants relating to the determination and payment of the amount of Greg's 50% Capital Interest, plaintiffs may hereafter seek additional relief from the court.

5. Judgment shall be entered in favor of Estate and against Dennis for $7097.59 (one-half of the proceeds of the Hoover contract). Interest on such amount shall accrue at the rate of 5% per annum from and after August 3, 2012.

The defendants appeal, asserting (1) partial liquidation is unnecessary because the Estate has an adequate remedy at law, (2) the decree should be modified to prevent double recovery, and (3) the dates of accrual of interest should be modified.

## II. Scope and Standard of Review.

This action was tried in equity, and therefore, our review is de novo. *See* Iowa R. App. P. 6.907. "In equity cases, we are not bound by the district court's factual findings; however, we generally give them weight, especially with regard to the credibility of witnesses." *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 97 (Iowa 2011).

## III. The Operating Agreement.

Pursuant to Iowa Code section 489.110(1) (2011), a limited liability company's operating agreement governs:

a. Relations among the members as members and between the members and the limited liability company.

b. The rights and duties under this chapter [Iowa Code chapter 489—the Revised Uniform Limited Liability Company Act (RULLCA)] of a person in the capacity of manager.

c. The activities of the company and the conduct of those activities.

d. The means and conditions for amending the operating agreement.

If the operating agreement does not address any of the matters listed, the provisions of the RULLCA govern.[10] Iowa Code § 489.110(2).

The Somers Farm operating agreement contains these pertinent definitions:

> 1.06 "Capital Interest" shall mean an Interest that would give the Member a share of the proceeds if the Limited Liability Company's assets were sold at fair market value and then the proceeds were distributed in a complete liquidation of the Limited Liability Company.
> . . . .
> 1.09 "Distribution" shall mean any distribution pursuant to Section 5.04 by the Limited Liability Company of cash to Members or any Distribution in Kind.

Article V of the operating agreement contains provisions relevant to allocations and distributions:

> 5.04 <u>Distribution of Cash, Securities, Warrants or Options</u>.
> (a) The Manager may distribute to the Members any cash of the Limited Liability Company in excess of working capital requirements or other amounts that they determine shall be necessary or appropriate for the operation of the business of the Limited Liability Company or its winding up and dissolution. All such cash distributions shall be made to the Members in accordance with paragraph (c) of this Section 5.04.
> . . . .
> (c) Any distribution of cash pursuant to paragraph (a) of this Section 5.04 . . . shall be made to the Members in proportion to their interests.
> (d) The value of any Distribution in Kind as of any date of determination (or in the event such date is a holiday or other day that is not a business day, as of the next preceding business day) shall be the estimated fair value of any property distributed as determined by the Members.

Article VI governs the management of Somers Farm. Section 6.03 places these limits on the manager's authority:

---

[10] Although the 2004 operating agreement predates the RULLCA, Iowa Code section 489.1304(2) provides: "[O]n and after January 1, 2011, this chapter governs all limited liability companies."

The Manager shall have no authority to do any act prohibited by law or in contravention of this Agreement, nor shall the Manager have any authority to do any of the following without the prior written consent of the Members holding at least a majority of the Units;

(a) permit or cause the Limited Liability Company to make any loan to any Manager or any of their Affiliates;

(b) permit or cause the funds of the Limited Liability Company to be commingled with the funds of any other person;

(c) permit any creditor who makes a nonrecourse loan to the Limited Liability Company to acquire, at any time as a result of making such loan, any direct or indirect interest in the profits, capital or property of the Limited Liability Company other than as a secured creditor;

(d) perform any act which would impair or make impossible the ordinary conduct of the Limited Liability Company's business;

(e) sell all or substantially all of the assets of the Limited Liability Company other than in the ordinary course of business or merge the Limited Liability Company with any other entity.

As the manager of Somers Farm, Dennis had the following obligations pursuant to section 6.04 of the operating agreement: "(b) maintain accounting records from which a Limited Liability Company Capital Account Balance can be determined for each member" and "(f) have fiduciary responsibility for the safekeeping and use of all funds and assets of the Limited Liability Company, and not employ or permit others to employ such funds or assets (including any interest earned thereon) in any manner except for the benefit of the Limited Liability Company."

Article XII governs the termination and dissolution of the entity.

12.01 <u>Events Requiring Termination and Dissolution</u>. The Limited Liability Company shall be dissolved upon the happening of any of the following events:

. . . .

(d) the death, insanity, withdrawal, retirement, resignation, expulsion, bankruptcy, or dissolution of any Member or any other event which under the Act shall result in the dissolution or termination of the Limited Liability Company unless the business of the Limited Liability Company is continued by the consent of all of the remaining Members.

**IV. Discussion.**

*A. Remedy.*  The defendants do not claim on appeal that the trial court erred in finding Dennis, as manager, engaged in oppressive conduct vis-a-vis the other members or that the court erred in rejecting the Estate's request for dissolution of the limited liability company.  Rather, they assert, "The remedy requiring partial liquidation of the remaining LLC assets fashioned by the court is not equitable and not financially advisable in the current market conditions."

The defendants maintain the Estate has the rights of a judgment creditor under Iowa Code sections 489.502[11] and 489.404(4).[12]  They contend that as judgment creditor, the Estate has "the capability of requesting a charging order" under section 489.503.[13]  Building on these statements, Dennis and Somers Farm argue that because the Estate has an adequate remedy at law, partial liquidation of the Estate's share of capital interest is not necessary and the court's decree "should be modified on appeal to grant the [Estate] a charging order to collect the amounts found owed by the trial court."

---

[11] "A transferee has the right to receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled."  Iowa Code § 489.502(2).

[12] "If a member or transferee becomes entitled to receive a distribution, the member or transferee has the status of, and is entitled to all remedies available to, a creditor of the limited liability company with respect to the distribution."  *Id.* § 489.404(4).

[13] Section 489.503(1) provides, in part, "On application by a judgment creditor of a member or transferee, a court may enter a charging order against the transferable interest of the judgment debtor for the unsatisfied amount of the judgment."

The Estate contends the defendants never presented this argument to the district court and have therefore failed to preserve error. We agree. Our supreme court has observed:

> Generally, we will not decide an issue presented to us on appeal that was not presented to and decided by the district court. For error to be preserved on an issue, it must be both raised and decided by the district court. If a party raises an issue and the district court does not rule on it, the party must file a motion to request a ruling on the issue.

*DuTrac Cmty. Credit Union v. Hefel*, 893 N.W.2d 282, 293–94 (Iowa 2017) (citations omitted) (noting defendant claimed the trial court was prevented from entering a charging order because the motion to compromise ordered in the bankruptcy court remained in effect). Though the defendant in *DuTrac* raised the issue in the district court, "the district court order never addressed the argument that the motion to compromise remains in effect. [The defendant] never filed a motion requesting a ruling on the issue and therefore did not properly preserve error." *Id.* at 294.

In any event, the Estate here requested dissolution of Somers Farm under section 489.701(1)(e).[14] However, the trial court acted under section 489.701(2),

---

[14] Iowa Code section 489.701(1) provides:
> A limited liability company is dissolved, and its activities must be wound up, upon the occurrence of any of the following:
>
> . . . .
> (e) On application by a member or transferee, the entry by a district court of an order dissolving the company on the grounds that the managers or those members in control of the company have done any of the following:
> (1) Have acted, are acting, or will act in a manner that is illegal or fraudulent.
> (2) Have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant.

which allows the court to "order a remedy other than dissolution." The defendants themselves cited the alternative to dissolution in their proposed findings of fact, conclusions of law, and decree.[15]

Here, the trial court concluded:

> For this reason, Iowa Code section 489.701(2) allows the court to fashion a remedy so that Estate is paid what it should have been paid when Dennis tried to invoke a right to buy Greg's interest. Thus, Dennis and [Somers Farm] should determine and pay Estate the amount of Greg's Capital Interest (at 50% of the Capital Interests), as defined in the Operating Agreement (which includes valuing the assets "at fair market value"), as of September 2011. . . . [A]nd Dennis'[s] conduct should not allow this amount to be less than $322,649.19 . . . .

"[T]he court, sitting in equity, has considerable flexibility in resolving the dispute." *Baur v. Baur Farms, Inc.*, 832 N.W.2d 663, 677–78 (Iowa 2013). "In fashioning appropriate remedies, we have explained that trial courts should regard requests for general equitable relief with considerable liberality." *Id.* at 678. We find no reason to modify the remedy fashioned by the district court in lieu of dissolution under section 489.701(2).

*B. Double recovery?* The defendants next assert that compliance with the decree will result in double recovery of $75,000—the money Dennis placed in his own account rather than Somers Farm's account when depositing the $225,000 obtained from McNaughton Way. They argue:

---

[15] The defendants wrote,
> The [RULLCA] empowers the court to order "a remedy other than dissolution," [Iowa Code] § 489.701(2), one that will provide relief to the plaintiff but allow the LLC to continue. In fact, it is common for a court finding there to be oppression not to order judicial dissolution of the entity but to order a buy-out of the oppressed interest holder instead, together with any other appropriate relief.

The equitable remedy fashioned by the court decree does not do equity by ordering that a minimum amount of $322,649.19 be credited to Greg's capital interest which includes one half of the $225,000 distribution to Dennis and also orders that a minimum amount of $75,000 must be paid in addition to the $322,649.19. The $75,000 is part of the $225,000.00 that the Court found was to be included in the $322,649.19 calculation.

We are not convinced.

As we read it, the court's ruling that the minimum amount to be credited to Greg's capital interest was $322,649.19 includes the value of the Webb 150, which, according to the mortgage held by McNaughton Way, was $225,000.

Separate and apart from the minimum capital interest calculation, the court decreed the Estate was entitled to a distribution equal to the $75,000 Dennis received in November 2011 because, under section 5.01(c) of the operating agreement, a distribution to a member entitled other members to a similar distribution "in proportion to their interests."[16] We decline to modify the decree on this basis.

*C. Interest accrual dates.* Finally, the defendants argue the decree should be modified for purposes of interest calculations.[17] They note the court awarded statutory interest under Iowa Code section 535.2(1)(d) at five percent per annum from and after the date they were "received to the use of [Dennis or Somers Farm] and retained beyond a reasonable time, without [the Estate's] consent, express or implied." The defendants maintain the appropriate interest rate should be

---

[16] The defendants' brief states the $75,000 distribution to Dennis was presumed to be the combined member interests of Dennis and Linda, i.e., a fifty-percent interest.

[17] The defendants challenge only the distribution and capital interest dates. They make no argument as to the accrual date of the Hoover loan so we need not address that aspect of the decree.

determined by section 535.3, as interest "allowed on all money due on judgments and decrees of courts at a rate calculated according to section 668.13." *See Sauer v. Moffitt*, 363 N.W.2d 269, 276 (Iowa Ct. App. 1984) (awarding money judgment interest in action seeking dissolution of corporation where the court allowed a buyout alternative remedy).

The Estate counters by arguing prejudgment interest may be awarded from the time the damage is complete. *See Gosch v. Juelfs,* 701 N.W.2d 90, 92 (Iowa 2005) ("Although in many instances interest is not recoverable on unliquidated damages prior to judgment, our cases have carved out a definite exception to this rule when it has been shown that the damage was complete at a particular time.").

> Generally, "interest runs from the time money becomes due and payable, and in the case of unliquidated claims this is the date they become liquidated, ordinarily the date of judgment. . . . One exception to this rule is recognized 'in cases in which the entire damage for which recovery is demanded was complete at a definite time before the action was begun.'"

*Midwest Mgmt. Corp. v. Stephens*, 353 N.W.2d 76, 83 (Iowa 1984) (alteration in original) (citations omitted).

Here, the court allowed prejudgment interest on (1) the $75,000 distribution to Dennis, (2) the Estate's interest in Somers Farm as Greg's transferee, and (3) Greg's interest in the Hoover contract. We conclude the decree must be modified—in part.

*1. Distribution and Hoover contract.* First, as they did in the previous division, the defendants argue the $75,000 Dennis deposited into his own account should be included in the $225,000 loaned by McNaughton Way to Somers Farm and is not a separate item of damages. We have already rejected that argument.

Dennis transferred $75,000 from the Somers Farm bank account to his own on November 14, 2011. Under the operating agreement, the Estate was entitled to a similar payment on that date. Thus, that amount became due and payable on November 14, 2011. Interest at a rate of five percent per annum shall run from that date.

With respect to the Hoover contract, the trial court made these factual findings:

> 57. On March 1, 2012, Bjornstad emailed Dennis with information regarding the Hoover contract, indicating that the buyers were going to pay off the balance before the due date and take deed to the property.
> 58. On March 12, 2012, the warranty deed "in fulfillment" of the Hoover contract was recorded.
> 59. According to Bjornstad's email, the balance of the Hoover contract at that time would have been slightly less than $14,195.19.
> 60. . . . [T]he proceeds of the payoff of the Hoover contract, were assigned to [Somers Farm]. Therefore, the court finds that Greg's 50% interest in those sale proceeds, or approximately $7097, were payable to the estate on March 13, 2012.

This sum of $7097, too, represents an amount of damage "complete at a particular time" and thus interest should be allowed as to that item from March 13, 2012. *See Gosch*, 701 N.W.2d at 92–93 ("When, as here, a definite amount of recovery has been fixed by the trier of fact for a damage item shown to be complete at a particular time, interest should be allowed as to that item from the time that the damage was shown to be complete."). Interest at a rate of five percent per annum shall run from that date.

*2. Capital interest.* With respect to the accrual date of the capital interest, however, we agree with the defendants that interest should be awarded from the date judgment was entered, November 29, 2019. *See Sauer*, 363 N.W.2d at 276.

We note the trial court ruled on November 15, 2017, that there is "a genuine dispute of material fact that Greg held more than a 10% interest" in Somers Farm. And,

> [t]here is a genuine dispute of material fact whether Estate's request for an accounting of [Somers Farm's] transactions, profits, state and condition of the assets, monies on hand, and monies drawn out by Dennis satisfies the three requirements of section 489.410(2)(b) and are for purposes of settling Estate as required by section 489.504.

The court resolved those factual disputes on November 29, 2019, and ordered:

> 2. Dennis and/or [Somers Farm], jointly and severally, shall determine and pay Estate the amount of Greg's Capital Interest, as defined in the Operating Agreement, as of September 2011, under the following conditions:
> (a) The amount must be based upon the actual amounts of its liabilities at that time, not estimates;
> (b) It shall not include the debt then [owed by Net/Comm Services];
> (c) Dennis and/or [Somers Farm] shall provide to Estate objective, reliable, and verifiable documentation of the actual amounts of the liabilities and the fair market values of the assets, as of September 2011, and a calculation of the amount of the Capital Interest[.]

The trial court sitting in equity determined a *minimum* capital interest based on its observation that "delay in time and Dennis'[s] conduct should not allow this amount to be less than $322,649.19." Under these circumstances, interest shall run on the capital interest portion of the decree from the date of judgment.

**V. Conclusion.**

The district court was within its authority to provide equitable relief, and the ruling did not provide for a double recovery of $75,000. We affirm the court's decree in all respects with one exception. We modify the language of decretal paragraph 2(e), which shall provide: "Interest on the Capital Interest amount shall

accrue at the statutory rate for interest on judgments[18] from and after November 29, 2019."

**AFFIRMED AS MODIFIED.**

---

[18] Pursuant to Iowa Code 668.13(3): "Interest shall be calculated as of the date of judgment at a rate equal to the one-year treasury constant maturity published by the federal reserve in the H15 report settled immediately prior to the date of the judgment plus two percent. The state court administrator shall distribute notice monthly of that rate and any changes to that rate to all district courts."

The State court administrator's notice of November 13, 2019, indicates the one-year treasury constant maturity rate of 1.58%. *See* https://www.iowacourts.gov/iowa-courts/district-court/post-judgment-interest-table. Thus, the judgment interest rate is 3.58%.